## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **In re:**<br><br>**BOOKER T. LITTLE, JR.**<br><br>**Debtor** | **Case No. 16-00707-JW**<br>**Chapter 13** |
| **BOOKER T. LITTLE, JR.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CAREER EDUCATION CORPORATION,**<br>**A/K/A CEC and COLORADO**<br>**TECHNICAL UNIVERSITY, INC.**<br>**Defendants.** | **Adv. Case No.  19-80041-JW** |

## REPLY IN SUPPORT OF JOINT MOTION TO DISMISS, ALTERNATIVELY, JOINT MOTION TO COMPEL ARBITRATION

Defendants Career Education Corporation ("CEC") and Colorado Technical University, Inc. ("CTU") (for simplicity, CEC and CTU will be collectively referred to as "CEC"), by and through counsel, submit this Reply in Support of Joint Motion to Dismiss, Alternatively, Joint Motion to Compel Arbitration (the "Reply"),[1] and request that this Court dismiss the Complaint[2] with prejudice or compel arbitration.

## INTRODUCTION

Plaintiff's Opposition (defined below) is full of "assertions," but those assertions are contrary to the case law or even Plaintiff's Complaint.  Nowhere in Plaintiff's Opposition does Plaintiff deny CEC's statements that Plaintiff last attended CEC in May 2006—because he cannot.  Instead, Plaintiff argues he didn't become subjectively aware of a potential cause of

---

[1] All defined terms used in the Brief in Support of Joint Motion to Dismiss, Alternatively, Joint Motion to Compel Arbitration shall have the same meaning as used in this Reply.

DocID: 4828-8613-3415.2

action against CEC until much later.  This argument has been soundly rejected by South Carolina courts.

Plaintiff's tardy amendment of his schedules does not weigh against the application of judicial estopppel because plaintiff did not amend his schedules until a *month* after filing this suit (even assuming the amendment contained sufficient disclosure).

Plaintiff, in arguing his Complaint state claims, asks this Court to either disregard South Carolina state law or to find additional allegations that exist nowhere in the Complaint.

Finally, with respect to arbitration provision, Plaintiff mainly argues it is unenforceable because he did not *physically* sign the document.  Electronic signatures have been valid in South Carolina since at least 2004.

Nothing in Plaintiff's Opposition should dissuade this Court from granting the Joint Motion to Dismiss or alternatively the Joint Motion to Compel Arbitration.

## I.    Plaintiff's subjective knowledge of potential claims is not the standard to trigger the statute of limitations.

Plaintiff has failed to timely assert his state law claims.  As Plaintiff concedes, all his claims are governed by a three year statute of limitations and that the "discovery rule" governs the triggering of statutes.  The discovery rule is an objective test that is triggered when a person of common knowledge and experience would be on notice that some right has been invaded or that some claim might exist.  Under the discovery rule, "whether the particular plaintiff **actually knew he had a claim is not the test**." *Rumpf v. Massachusetts Mut. Life Ins. Co.* 593 S.E.2d 183, 187 (S.C. Ct. App. 2004) (emphasis added).[3] "Rather, courts must decide whether the

---

[3] For additional authority that a plaintiff's actual knowledge is irrelevant, see *Young v. S.C. Dept. of Corrections*, 511 S.E.2d 413, 416 (S.C. Ct. App. 1999); *Bayle v. S.C. Dept. of Transp.*, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001); *Poly-Med, Inc. v. Novus Sci. Pte. Ltd*, 330 F. Supp. 3d 1067, 1073 (D.S.C. 2018), *supplemented sub nom. Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, 2018 WL 4279443 (D.S.C. Aug. 31, 2018).

DocID: 4828-8613-3415.2

circumstances of the case would put a **person of common knowledge and experience on notice** that some right of his has been invaded, or that some claim against another party **might** exist." *Id.* (recognizing standard is an objective one, and not a subjective test) (emphasis added). "[T]he statute [of limitations] is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery; instead, reasonable diligence requires a plaintiff to act with some promptness." *Kelley v. Logan, Jolley, & Smith, LLP*, 682 S.E.2d 1, 4–5 (S.C. Ct. App. 2009) (internal citation and quotation marks omitted); *Brown v. Goodman Mfg. Co., L.P.*, 2015 WL 1006319, at *7 (D.S.C. Mar. 5, 2015).

Plaintiff repeatedly argues in his Brief in Opposition of Joint Motion to Dismiss, Alternatively, Joint Motion to Compel Arbitration (the "Opposition") that his causes of action did not accrue until he personally learned of a settlement agreement between CEC and states' attorneys general in 2018-2019.[4]  Plaintiff argues in his Opposition that his cause of action arose only when *he actually knew of his* claims—contrary to the explicit statements of the authority above.  Moreover, as alleged in the Complaint, Plaintiff was unsatisfied with the classes he attended and his enrollment experience.  *See* Complaint ¶¶ 161, 162, 164, 165, 166.  Those allegations, taken on their face, would place an ordinary person on notice of a potential claim. Accordingly, all applicable statutes of limitation expired no later than May 9, 2009, three years after Plaintiff's last date of attendance.  Waiting over a decade after the statute of limitations expired, should never be considered reasonable diligence.[5]

---

[4] Plaintiff attaches a copy of an "Assurance of Voluntary Compliance."  That document states "Nothing contained herein shall constitute or may be construed as an admission by CEC of any liability or wrongdoing." pg. 3. Additionally that document is not admissible in any action or proceeding brought by parties other than the signatory attorneys general.  pg. 21

[5] Because Plaintiff conceded that all claims are subject to a three year statute of limitations, the parties' briefing on laches is no longer at issue.

II. **Plaintiff fails to adequately address his failure to schedule a claim against CEC before filing this suit.**

Even assuming Plaintiff's generic mention of a claim against CEC in paragraph 34 on his Amended Schedule A/B is sufficient disclosure, Plaintiff does not address that this Amended Schedule was filed over a month *after* Plaintiff filed suit against CEC. However, at the same time Plaintiff made the purported disclosure in paragraph 34, he answered "no" to the following question "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Amended Schedule A/B, Paragraph 33.

Plaintiff claims he did not "know" about claims against CEC until the AG Settlement until late 2018 or early 2019. Assuming that Plaintiff's subjective knowledge was the applicable standard, this does not excuse Plaintiff's delay in adding a claim to his schedules. Accepting Plaintiff's argument, plaintiff should have amended his schedules as soon as he "knew" his claims.

Plaintiff's actions demonstrate that he is "playing fast and loose" with the judicial system, which is precisely what judicial estoppel is designed to prevent. *See Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982). Accordingly the Court should find Plaintiff's claims barred by judicial estoppel.

III. **Plaintiff's arguments do not show that the Complaint states any cause of action against CEC.**

Plaintiff's Opposition advances arguments that are not supported by the case law and that are not supported within the four corners of the Complaint.

a. **Plaintiff fails to point to another provision of the bankruptcy code in order to invoke 11 U.S.C. § 105 as a cause of action.**

As Plaintiff's own cited case law makes clear, § 105 may be invoked only "to preserve a right elsewhere provided in the [Bankruptcy] Code." *In re Watson,* 10-1292, 2010 WL 4496837,

DocID: 4828-8613-3415.2

at *2 (Bankr. N.D.W. Va. Nov. 1, 2010).   Plaintiff argues that *In re Watson* provides support for Plaintiff's invocation of an unlimited contempt power under § 105.  It does not.  In *In re Watson*, the plaintiff brought a complaint alleging violations of § 105 for the filing of a fraudulent proof of claim.  *Id.* That court found the "right[s] elsewhere provided in the Code" to be located at 11 U.S.C. §§ 501, 502 and Fed. R. Bankr. P. 3001. *Id.* at *3.  Here, Plaintiff cites *no* provision of the Bankruptcy Code that CEC allegedly violated and CEC has not filed a proof of claim in this case, which could be deemed fraudulent.   Accordingly, no basis for contempt under § 105 exists.

### b.  Plaintiff cannot discharge a non-existent debt.

As acknowledged by Plaintiff, CEC does not, and has never had a loan with Plaintiff. Plaintiff's sole remaining student loan has been discharged by Navient. SOMF #14.  Plaintiff's admission requires a dismissal of Count 2.

### c.  Universities do not owe general duties to its students found outside their contracts.

Plaintiff argues that the cases cited by CEC are distinguishable.   However, Plaintiff misconstrues the holding of the key South Carolina Supreme Court case of *Hendricks v. Clemson Univ.*, 353 S.C. 449, 457-58 (S.C. 2003).  Plaintiff states the holding of *Hendricks* that the court *only* found a lack of fiduciary duty.   That is incorrect.   *Hendricks* also found that Clemson University did not owe a duty of care under negligence theories as well. *Id.* at 458.  This holding not only applies to "negligent teaching claims," but also school advisors and other officials.  *Id.* Therefore, Plaintiff's attempts to recast his claim as one for negligent advising also fail. Plaintiff also attempts to argue that his claim actually is one for failure to perform a service at all. This allegation is belied by the allegations in his Complaint, where Plaintiff admits that he attended the classes for a semester and a half.  *See* Complaint ¶ 161, 166, 178.

DocID: 4828-8613-3415.2

Alternatively, Plaintiff argues that a duty arose by contract.  This argument is plainly barred by the economic loss rule as shown in the Brief and as further addressed below.   Plaintiff also asserts he is a third party beneficiary of CEC's professors' contracts.    This outlandish allegation is nowhere in his Complaint and is asserted for the first time in the Opposition.   For support for this argument, Plaintiff cites cases dealing with the beneficiary in a will and the drafting lawyer and a homeowner's relation to a contract between a county and city.  As those cases show, the agreement itself must intend to benefit a third party: *Touchberry v. City of Florence*, 367 S.E.2d 149, 150 (S.C. 1988) ("The language of the agreement here clearly shows that the contracting parties intended for the agreement to be enforceable by residents of the MSA"); *Fabian v. Lindsay*, 765 S.E.2d 132, 140 (S.C. 2014) ("This intent in estate planning is directly and inescapably for the benefit of the third-party beneficiaries.").   Plaintiff does not allege in his Complaint (nor could he) what provisions in CEC's contracts with its professors were intended to benefit Plaintiff.  CEC's contracts with its professors are two party agreements between CEC and those professors alone.

Finally, Plaintiff argues that this Court, for the first time, should recognize a duty owed by CEC generally to students under South Carolina law.  This request is directly foreclosed by *Hendricks* and would contravene the settled principles of federalism and those announced in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) that a federal court applies state law as it finds it and does not *create* state law.  *See Kerr v. Marshall U. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016) ("Under the familiar *Erie* doctrine, [courts] apply state substantive law . . . when reviewing state-law claims."); *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 274 (8th Cir. 1983) ("…a bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law.").

DocID: 4828-8613-3415.2

### d.  The Economic Loss Rule does not apply only to product liability actions.

Plaintiff asserts that the economic loss rule applies only to product liability cases. Nowhere is that argument supported by any authority cited by Plaintiff and Plaintiff does not cite any authority for that proposition.

Plaintiff may not recover economic damages in tort for duties governed by a contract. Plaintiff admits that he and CEC were parties to a contract: "The Plaintiff and [CEC] entered into a valid contract . . ." Complaint ¶ 279.

The case, *Kennedy v. Columbia Lumber & Mfg. Co., Inc.* 384 S.E.2d 730 (1989), does not help Plaintiff's argument.  *Kennedy* requires the existence of a legal duty outside of a contract to preclude the application of the economic loss rule: "The economic loss rule will still apply where duties are created solely by contract." *Id.* at 737. CEC does not owe a duty to Plaintiff outside of the terms of the Enrollment Agreement.  The South Carolina Supreme Court has made clear that the economic loss rule generally applies to any tort when the duty to the plaintiff arises solely under a contract.  *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995) (discussing doctrine in context of service contract).

### e.  Plaintiff's rephrasing of his breach of contract allegations are contradicted by the Complaint.

Plaintiff again attempts to recast his breach of contract allegations (in order to state a claim within existing case law) as the failure to provide "any educational services at all."  As shown in Section I, this is contradicted by the allegations in the Complaint where he admits he attended CEC for approximately a semester and a half.  Plaintiff additionally claims he "specifically pointed to specific contract provisions to sufficiently support his claim for breach of contract."  Opposition, pg. 33.  Plaintiff makes this statement without citing a *single* provision

DocID: 4828-8613-3415.2

violated by CEC in the Enrollment Agreement.  Plaintiff alternatively asks for leave to replead to include allegations in "catalogues, bulletins, circulars, and regulations" based upon California state case law.[6]  Plaintiff's case law is not applicable because Plaintiff's Enrollment Agreement contains a broad integration clause:

**14. Entire Agreement:** This Enrollment Agreement constitutes the entire agreement between [Plaintiff] and [CEC] concerning all aspects of the education and training the [Plaintiff] will be provided by the [CEC].  By signing this agreement, the Student agrees that no binding promises, representations or statements have been made to the [Plaintiff] by [CEC] or any employee of [CEC] regarding any aspect of the education and training the [Plaintiff] will receive from the [CEC] that are not set forth in writing in this Enrollment Agreement. . . .

Section 14, Enrollment Agreement.

So even if this Court were to apply California law, the contract here would dictate a different result.

> **f.  Plaintiff accepted a benefit from CEC and cannot prevail under unjust enrichment.**

CEC did not receive a gratuitous benefit from Plaintiff and accordingly is not "unjustly enriched."  Plaintiff's argument regarding unjust enrichment ignores that Plaintiff *did* attend classes at CEC.  There is no gratuitous benefit to be returned.  Plaintiff and CEC contracted to provide educational services, which Plaintiff accepted and CEC provided.  Plaintiff is not entitled to a "refund" of the services for which he contracted.

> **g.  Plaintiff's conduct, not CEC's, is the relevant inquiry under the doctrine of unclean hands.**

Plaintiff's argument against the application of the doctrine of unclean hands points the finger at his allegations related to CEC—points which are *irrelevant* to the application of the doctrine of unclean hands as to Plaintiff.  Plaintiff at the very least knew of the existence of a claim in late 2018, and early 2019, but did not amend his schedules until *after* filing suit against

---

[6] Plaintiff cites *Zumbrun v. University of Southern California*, 25 Cal.App.3d 1, 10 (1972).

DocID: 4828-8613-3415.2

CEC even though Plaintiff filed his bankruptcy petition in 2016. That is inequitable conduct and as a result CEC has been forced to defend a suit, without any prior notice, from a student whose attendance ended more than a decade ago.

### h.  Plaintiff fails to connect the unfair trade practices allegedly performed by CEC to himself.

Plaintiff's asserted laundry list of unfair trade practices unconnected with any activity by the Plaintiff is insufficient to state a claim. Plaintiff's Opposition misses the point of CEC's argument. Plaintiff lists a litany of things he may consider "unfair trade practices," but fails to allege in the Complaint how any of those alleged actions were connected to Plaintiff or caused harm to Plaintiff. There is *no* connection between CEC's alleged unfair trade practices and their effect on Plaintiff.

### IV.    The arbitration provision is enforceable and electronic signatures are valid signatures.

Plaintiff's main argument against applying the arbitration clause is that plaintiff did not "physically sign" the Enrollment Agreement, and that the electronic signature of plaintiff is insufficient. This kind of argument is precluded by South Carolina's adoption of the Uniform Electronic Transactions Act ("UETA") S.C. Code §§ 26-6-10, *et seq.*[7] UETA applies when parties agree to conduct transactions based by electronic means, which is determined from the context and surrounding circumstances, including the conduct of the parties. S.C. Code Ann. § 26-6-50. Plaintiff enrolled in an *online-only* program at CEC, specifically a software engineering program at "Colorado Technical University Online." Plaintiff and CEC's entire course of conduct occurred through electronic means. *See Dalos v. Novaheadinc*, 2008 WL 4182996, at *4 (Ariz. App. 1st Div. Mar. 18, 2008) (Finding in its case "it would be anomalous

---

[7] UETA is a uniform state law consistent with the federal E-SIGN statute, 15 U.S.C. § 7001, which also precludes Plaintiff's argument.

DocID: 4828-8613-3415.2

to suggest that . . . employees of a software company, did not consent to using e-mail" and finding the parties agreed to conduct transactions electronically.") (unpublished). Additionally, the Enrollment Agreement contained an electronic signature consent provision. Section 15 Enrollment Agreement. The affidavit of Dave Czeszewski, attached as **<u>Exhibit A</u>** and incorporated herein, describes the process in which a CTU student signs an Enrollment Agreement electronically. UETA is applicable to Plaintiff's and CEC's agreement.

UETA adopts a broad view of the enforceability of electronic signatures in contracts:

(A) A record or signature must not be denied legal effect or enforceability solely because it is in electronic form.

(B) A contract must not be denied legal effect or enforceability solely because an electronic record is used in its formation.

(C) An electronic record satisfies a law requiring a record to be in writing.

(D) An electronic signature satisfies a law requiring a signature.

S.C. Code Ann. § 26-6-70.[8]

Plaintiff electronically signed the Enrollment Agreement and that signature is valid under UETA.

Plaintiff also argues that the Enrollment Agreement is not enforceable because Plaintiff states the Enrollment Agreement was not returned to the admissions office. It is not clear on what basis Plaintiff makes this assertion. A representative of CEC signed the Enrollment Agreement one day *after* Plaintiff signed it, which necessarily means the agreement was signed and returned to CEC. Plaintiff's assertion that the Enrollment Agreement is a simply form document, is contradicted by Affidavit of Colleen Wilson (attached to the Brief), which attests the document is Plaintiff's Enrollment Agreement—a document which bears his name. Unlike

---

[8] UETA has a similar provision stating electronic signatures shall be admissible in evidence. S.C. Code § 26-6-130.

DocID: 4828-8613-3415.2

CEC, Plaintiff has not submitted an affidavit to support his arguments in the Opposition related to the arbitration provision.

### a. The arbitration provision does not violate the Servicemembers Civil Relief Act.

Plaintiff alleges that somehow the arbitration provision violates the "spirit" of the Servicemembers Civil Relief Act ("SCRA").[9]  No provision of the SCRA prohibits arbitration agreements.  The SCRA caps the interest rate of service members and provides protections against default judgments, foreclosures, installment contracts and repossessions, residential lease terminations, and enforcement of storage liens.  *See* 50 U.S.C. §§ 3931, -37, -52, -53, -55, -58. There is no basis under SCRA, and Plaintiff does not cite a single provision of the statute, to invalidate an arbitration provision.

### b. The arbitration provision provides for the resolution before a neutral forum and is not "unconscionable."

Plaintiff advances several arguments that the arbitration provision is unenforceable because it is unconscionable.  None have merit.  Plaintiff first argues that Colorado is an unreasonable location—despite the fact Plaintiff agreed to attend a Colorado university.  Choice of forum clauses are presumptively valid.  *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996).  Given that Plaintiff was attending a Colorado university, Colorado is a reasonable choice of forum.

Plaintiff also argues that the agreement is unconscionable under South Carolina *state* arbitration law.  Plaintiff's Enrollment Agreement is an interstate agreement affecting commerce that explicitly adopts the Federal Arbitration Act ("FAA") as the governing law. Section 11, Enrollment Agreement.  The FAA pre-empts state laws which "require a judicial forum for the

---

[9] Plaintiff refers to the "Sailors and Relief Act." Presumably Plaintiff was referring to the Soldiers' and Sailors' Relief Act, which was amended and renamed by the SCRA in 2003.

DocID: 4828-8613-3415.2

resolution of claims which the contracting parties agreed to resolve by arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior U*., 489 U.S. 468, 478 (1989). As shown in the Brief, the arbitration provision delegated the threshold inquiry of arbitrability to the arbitrator.  The enforceability of the arbitration provision is accordingly governed by federal law as outlined in the Brief.   *See Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 452 (4th Cir. 1997).  Plaintiff's enforceability argument revolves solely around South Carolina state arbitration law, which is not the applicable law here.

As recognized by the Fourth Circuit, when examining the enforceability of an arbitration provision, a court looks solely to the arbitration provision, and not the contract as a whole.  *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999).  Therefore, the Court should disregard any of Plaintiff's arguments that do not reference the arbitration provision itself.

Unlike the situation in *Hooters*, where the employer created its own skewed arbitration rules, the arbitration provisions calls for arbitration under a fair and neutral process under the rules of the American Association of Arbitrators ("AAA").[10]  The AAA is recognized as a fair neutral forum in this district.  *See Green v. Rent-A-Ctr. E., Inc.*, 2015 WL 8907452, at *4 (D.S.C. Nov. 24, 2015) (compelling arbitration under the AAA rules), report and recommendation adopted sub nom. *Green*, 2015 WL 8967318 (D.S.C. Dec. 15, 2015).

Plaintiff additionally argues generally that he had unequal bargaining power and the terms were not sufficiently conspicuous.  These arguments were raised and rejected in *Green* and accordingly are not valid arguments to void an arbitration provision in this district.

None of Plaintiff's arguments provide a basis to void the arbitration provision. Accordingly, the arbitration provision is enforceable.

---

[10] In *Hooters,* an AAA official testified for the defendant that the procedures created by the plaintiff were so one-sided that the AAA would refuse to arbitrate under those rules.

DocID: 4828-8613-3415.2

### V.    Plaintiff's exhibits are irrelevant and are not admissible.

Plaintiff filed four unmarked exhibits contemporaneously with his Opposition.  Those

exhibits are inadmissible and entirely irrelevant to Plaintiff's claims.  Plaintiff additionally fails

to authenticate or lay the foundation for those exhibits, only sporadically referring to them

throughout the Opposition without identifying their relevance.  As noted in footnote four, the

Assurance of Voluntary Compliance, does not contain a single admission by CEC and, by its

terms, is not admissible in this proceeding.  Moreover, the Assurance of Voluntary Compliance

pertains to alleged conduct that occurred *after* Plaintiff's attendance at CEC.   Plaintiff also

attaches a press release, but does not describe the reason for its filing.  This document contains

multiple levels of hearsay and generally refers to the Assurance of Voluntary Compliance, which

is inadmissible.

Plaintiff additionally attaches an excerpt of what CEC believes to be from a Senate

Committee Report.  This document is also irrelevant to Plaintiff's claims and contains up to three

layers of hearsay.

Plaintiff has also filed, separately from the three documents mentioned above, an

unpublished Fourth Circuit opinion, which states it is not binding precedent.  That opinion

merely states the applicable legal standard for unconscionability under West Virginia law and

affirmed a district court finding of unconscionability.  The opinion does not even state or

describe the terms of the provision, and briefly affirmed after "thoroughly review[ing] the

record."  Accordingly the opinion is not instructive to the issues in this case.

The Court should disregard Plaintiff's exhibits and not afford them any weight.

## <u>CONCLUSION</u>

For the reasons set forth above, CEC respectfully requests that the Court dismiss Plaintiff's Complaint against CEC with prejudice, or alternatively, if the Court finds Plaintiff's Complaint states a cause of action, enter an order compelling Plaintiff to arbitrate his claims and dismissing, or alternatively, staying this action, and award CEC such other and further relief as the Court deems just and proper.

DocID: 4828-8613-3415.2

Dated: October 1, 2019                    Respectfully submitted,

                                          NELSON MULLINS RILEY & SCARBOROUGH
                                          LLP

                                          By: /s/George B. Cauthen
                                          George B. Cauthen
                                          Federal Bar No. 00081
                                          E-Mail: george.cauthen@nelsonmullins.com
                                          Graham S. Mitchell
                                          Federal Bar No. 11763
                                          E-Mail: graham.mitchell@nelsonmullins.com
                                          1320 Main Street, 17th Floor
                                          Post Office Box 11070 (29211)
                                          Columbia, SC 29201
                                          (803) 799-2000

                                          HUSCH BLACKWELL LLP

                                          Martin M. Loring          MO. Bar  #29712
                                          John J. Cruciani          MO. Bar  #43073
                                          Ross H. DeLong            MO. Bar  #70022
                                          4801 Main Street, Suite 1000
                                          Kansas City, MO 64112
                                          Telephone:  (816) 983-8000
                                          Fax:  (816) 983-8080
                                          martin.loring@huschblackwell.com
                                          john.cruciani@huschblackwell.com
                                          ross.delong@huschblackwell.com

                                          *Attorneys for Career Education Corporation and
                                          Colorado Technical University, Inc.*

DocID: 4828-8613-3415.2

## CERTIFICATE OF SERVICE

I the undersigned administrative assistant with the law offices of Nelson Mullins Riley & Scarborough LLP, attorneys for Career Education Corporation and Colorado Technical University, Inc. do hereby certify that I have served all parties in this action with a copy of the pleading(s) hereinbelow specified by either mailing a copy of the same by United States Mail, postage prepaid, or electronic service through the court's CM/ECF case filing system to the following:

Pleadings:      Reply in Support of Joint Motion to Dismiss, Alternatively, Joint Motion to Compel Arbitration

Parties Served:

Booker T Little, Jr.
2308 Rembert St.
Columbia, SC 29201

Daniel A. Stone
Stone Law Firm
P.O. Box 3884
Irmo, SC 29063
Email: danielstonelaw@gmail.com

William K. Stephenson, Jr.
P.O. Box 8477
Columbia, SC 29202
Email: admin@columbia13.com

US Trustee
Storm Thurmond Federal Bldg
1835 Assembly Street
Suite 953
Columbia, SC 29201

Joan A. Kishline

Columbia, South Carolina
October 1, 2019