# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Booker T Little, Jr.,<br><br>                                    Debtor(s). | C/A No. 16-00707-JW<br><br>Adv. Pro. No. 19-80041-JW<br><br>Chapter 13 |
| Booker T Little,<br><br>                                    Plaintiff(s),<br><br>v.<br><br>Career Education Corporation a/k/a CEC and<br>Colorado Technical University a/k/a CTU,<br><br>                                    Defendant(s). | **ORDER ON JOINT MOTION TO<br>COMPEL ARBITRATION** |

This matter comes before the Court upon the Joint Motion to Dismiss, Alternatively, Joint Motion to Compel Arbitration ("Motions") filed by Career Education Corporation and Colorado Technical University, Inc. ("Defendants") on August 29, 2019. Booker T. Little, Jr. ("Plaintiff") filed a response to the Motions. On September 18, 2019, the Court entered a Consent Order between Plaintiff and Defendants setting the schedule for filing briefs on the Motions. Pursuant to that Consent Order, the parties filed lengthy briefs, and the Court held a hearing on the matters.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 157. The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052.[1]

---

[1]    To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

Further, if it is subsequently determined that this Court does not have authority to enter this Order as a final order, the Court submits the following as proposed findings of fact and conclusions of law to the United States District Court for review."

## **FINDINGS OF FACT**

In his Amended Complaint, Plaintiff has filed several causes of action against Defendants regarding his recruitment by and enrollment in the online university of Defendant Colorado Technical University, Inc., where he attended online classes from 2005 to 2006. Career Education Corporation is the parent company of Colorado Technical University, Inc. and also a Defendant in Plaintiff's Amended Complaint.

According to Plaintiff's Amended Complaint, Colorado Technical University and Career Education Corporation have been the subject of litigation with the attorneys general of several states, including South Carolina, for its alleged prior practices with its students, including matters related to its alleged improper student recruitment and collection of tuition among other items. Per Defendants' pleadings, Defendants entered a settlement agreement with these states' attorneys general without admitting to any fault.[2]  Plaintiff alleges this settlement agreement resulted in many students receiving a discharge of their student loan debt incurred while attending Defendants' online university. Plaintiff commenced the present proceeding after learning that this settlement agreement was not applicable to him as the time period in which he attended Defendants' online university was not subject to the agreement.

Plaintiff's causes of action can be divided into two separate categories: State Law Claims and Bankruptcy Law Claims. The State Law Claims include causes of action for negligence, fraud, fraud in the inducement, negligent misrepresentation, fraudulent misrepresentation, breach of contract, unjust enrichment, promissory estoppel, and a violation of the South Carolina Unfair Trade Practices Act. The Bankruptcy Law Claims include a cause of action for abuse of process

---

[2]     Defendants assert that the settlement agreement is not admissible as evidence into any proceedings brought by parties other than the states' attorneys general.

under 11 U.S.C. § 105 and a cause of action to determine dischargeability of debt under 11 U.S.C.

§ 523(a)(8).[3]

      In their Motions, Defendants allege, among other arguments, that Plaintiff's claims are

subject to arbitration due to a provision included in the enrollment agreement alleged to have been

electronically signed by Plaintiff on September 28, 2005 ("Enrollment Agreement").[4] Paragraph

11 of the Enrollment Agreement provides the following regarding dispute resolution ("Arbitration

Clause"):

> 11. Dispute Resolution: Any disputes or controversies between the parties to this Agreement arising out of or relating to the student's recruitment, enrollment, attendance, education or career service assistance by [Colorado Technical University] Online or to this Agreement shall be resolved first through the grievance policy published in the catalog. If not resolved in accordance with the procedures outlined in the University catalog to the satisfaction of the student, then the dispute shall be resolved by binding arbitration in accordance with Commercial Arbitration Rules of the American Arbitration Association then in effect or in accordance with procedures that the parties agree to in the alternative. The Federal Arbitration Act and related federal judicial procedure shall govern this agreement to the fullest extent possible, excluding all state arbitration law, irrespective of the location of the arbitration proceedings or of the nature of the court in which any related proceedings may be brought. Any such arbitration shall be the sole remedy for the resolution of any disputes or controversies between the parties to this agreement. Any such arbitration shall take place before a neutral arbitrator in a locale near [Colorado Technical University] Online unless the Student and [Colorado Technical University] Online agree otherwise. The arbitrator must have knowledge of and actual experience in the administration and operations of postsecondary educational institutions unless the parties agree otherwise. The arbitrator shall apply federal law to the fullest extent possible in rendering a decision. The arbitrator shall have the authority to award monetary damages measured by the prevailing party's actual damages and may grant any non-monetary remedy or relief that the arbitrator deems just and equitable and within the scope of this agreement between the parties. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator shall not have any authority to award punitive damages, treble damages, consequential or indirect damages, or other damages not measured by the prevailing

---

[3]     Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be to section number only.

[4]     A copy of the Enrollment Agreement was attached to Defendants' Motions. The record is not clear if the Enrollment Agreement was alleged to be signed by Plaintiff at the time he was apparently on active deployment in Iraq.

party's actual damages, or to award attorney's fees. The arbitrator also shall not
have any authority to alter any grade issued to a student. The parties shall bear their
own costs and expenses. The parties also shall bear an equal share of the fees and
costs of the arbitration, which include but are not limited to the fees and costs of
the arbitrator, unless the parties agree otherwise or the arbitrator determines
otherwise in the award. Except as may be required by law, neither a party nor an
arbitrator may disclose the existence, content, or results of any such arbitration
without the prior written consent of both parties.

In response to the Motions, Plaintiff alleges that the Arbitration Clause is unconscionable under

South Carolina law and that Defendants have not demonstrated that Plaintiff signed or returned

the Enrollment Agreement. While Defendants dispute Plaintiff's arguments, they allege, among

other arguments, that the Enrollment Agreement provides for an arbitrator, and not the Court, to

decide these issues regarding the validity and formation of the Arbitration Clause contained in the

Enrollment Agreement. Therefore, Defendants assert that, pursuant to the Federal Arbitration Act,

all of the Plaintiff's asserted causes of action must immediately be submitted to an arbitrator for

these determinations.

## **CONCLUSIONS OF LAW**

Defendants brought their Motion to Dismiss and their Motion to Compel Arbitration in a

single pleading.[5] As such, the Defendants' Motion to Compel Arbitration was heard at the same

time as their Rule 12(b)(6) motion to dismiss. At the hearing, the parties did not present evidence

in support of their positions on the arbitration issues but relied on their arguments. Defendants

allege that arbitration must be compelled under the Federal Arbitration Act ("FAA"), which if

applicable to this proceeding, would require the Court to stay a determination of the merits of the

present adversary proceeding, apparently including Defendants' Rule 12(b)(6) motion to dismiss.

*See* 9 U.S.C. § 3 (2019) (mandating that upon the court's satisfaction that the issues involved are

---

[5]      Upon the direction of the Clerk of Court, Defendants filed identical copies of the Motions as two separate
filings in CM/ECF—one as a Rule 12(b)(6) motion to dismiss and the second as a motion to compel.

referable to arbitration pursuant to the parties' agreement, the court shall stay the trial of an action until such arbitration has been completed in accordance with the parties' agreement). Therefore, for each of the Plaintiff's causes of action, the Court must first determine if the claim is subject to arbitration before addressing any issue on the merits of the claim, including Defendants' Rule 12(b)(6) motion to dismiss. *See Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012) ("[C]ourts at the arbitrability stage 'have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.'" (quoting *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986))); *U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 540 (S.D.W. Va. 2015) ("As the Court finds that Defendants also request that the Court compel arbitration of Count III and that this claim is arbitrable pursuant to the ADR Clause, the Court does not reach Defendants' argument under Rule 12(b)(6).") *McLean v. United States*, 566 F.3d 391, 398 (4th Cir. 2009) ("Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice.").[6]

For the purposes of this Order, in determining whether the causes of action are subject to arbitration, the Court will address Plaintiff's Bankruptcy Law Claims and State Law Claims separately.

---

[6]    In the Motions, Defendants seek the Court to first determine the Rule 12(b)(6) motion to dismiss and if any claims survive such motion, the Court should then compel arbitration of those surviving claims The Court declines to do so, finding that the motion to compel arbitration should be considered first before the Court makes any determination on the merits of the claims, including any dismissals pursuant to Rule 12(b)(6).

*Bankruptcy Law Claims:*

In the present matter, the Court must first determine if Debtor's Bankruptcy Law Claims, grounded in the Bankruptcy Code, are subject to arbitration. While courts are generally required to enforce arbitration agreements, bankruptcy courts in their discretion may retain constitutionally core claims if "arbitration would pose an inherent conflict with the Bankruptcy Code." *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015); *see also Carolina Shores, LLC v. Dixon (In re Daufuskie Properties, LLC)*, C/A No. 09-00389-JW, Adv. Pro. No. 09-80134-jw, slip op. (Bankr. D.S.C. Nov. 19, 2009) (finding that a bankruptcy court may decline to compel arbitration of a core proceeding); *Moore v. Green Tree Fin. Corp. (In re Moore)*, C/A No. 97-04050-W, Adv. Pro. No. 97-80311-W (Bankr. D.S.C. June 13, 1999) (declining to enforce arbitration in a core matter).

Plaintiff's first Bankruptcy Law Claim is a cause of action seeking the Court to exercise its authority under § 105 for an alleged abuse of process by Defendants. There is little doubt for the Court that a delegation to an arbitrator of the bankruptcy court's § 105 authority would inherently conflict with the Bankruptcy Code. First, Congress expressly assigned the authority under § 105 to bankruptcy courts to issue any order, process or judgment necessary to carry out the Bankruptcy Code. Section 105 is commonly utilized by bankruptcy courts as the central enforcement mechanism, including contempt and abuse of process proceedings. To permit a party other than the bankruptcy court to make such determinations would undermine the court's ability to enforce both its own orders and the Bankruptcy Code and would "strip the courts of their primary enforcement mechanism." *Hooks v. Acceptance Loan Co., Inc.*, 2011 WL 2746238 (M.D. Ala. July 14, 2011) ("[A]rbitration of §105(a) contempt proceedings would inherently conflict with the Bankruptcy Code, undermining the bankruptcy court's authority to enforce its orders."). Therefore,

as § 105 is critical to the authority of bankruptcy courts, the Court declines to send to an arbitrator

the determination of any allegations made pursuant to § 105.

Plaintiff's second Bankruptcy Law Claim is a cause of action seeking the Court to

determine the dischargeabilty of his student loan debts, alleging that he satisfies the requirements

of § 523(a)(8) and the standards of *Brunner v. New York State Higher Education Services, Corp.*,

831 F.2d 395 (2d Cir. 1987). Determinations of dischargeability of particular debts are listed as

core proceeding under 28 U.S.C. §157 and have been routinely held to be "constitutionally core"

by bankruptcy courts. *See, e.g., Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 17–24 (B.A.P. 9th Cir.

2012) aff'd 760 F.3d 1038 (9th Cir. 2014) (holding that dischargeability actions are

constitutionally core matters and noting that "determining the scope of the debtor's discharge is a

fundamental part of the bankruptcy process"); *In re DiPiero*, 553 B.R. 122, 128 (Bankr. N.D. Ill.

2016) ("It 'goes almost without saying,' consequently, that non-dischargeability claims are

'constitutionally core.'" (quoting *In re Walker*, 515 B.R. 725, 740 (Bankr. W.D. Miss. 2014))).

Further, such determinations regarding a debtor's student loan debt have a material effect on the

payments under a chapter 13 plan and a debtor's reorganization and goal of a fresh start. As such,

the Court finds that the arbitration of dischargeability of a debtor's student loans would pose an

inherent conflict with the Bankruptcy Code. *See Moses*, 781 F.3d at 73 (upholding a bankruptcy

court's denial of a request to arbitrate when the dispute directly pertains to [the debtor's] plan for

reorganization [and arbitration] would 'substantially interfere with [debtor's] efforts to

reorganize'" (quoting *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d

164, 170 (4th Cir. 2005))); *Phillips*, 403 F.3d at 169 (holding that "[a]rbitration is inconsistent with

[the Bankruptcy Code's policy of] centralized decision-making because permitting an arbitrator to

decide a *core* issue would make debtor-creditor rights contingent upon an arbitrator's ruling rather

than the ruling of the bankruptcy judge assigned to hear the debtor's case"). Therefore, based on their inherent conflict with the Bankruptcy Code, the Court declines to order arbitration for the Bankruptcy Law Claims.[7]

### *State Law Claims*

Next, the Court will address the State Law Claims raised in Plaintiff's Amended Complaint. Defendants allege that all of the State Law Claims are subject to arbitration pursuant to the Arbitration Clause and the Federal Arbitration Act, which Plaintiff disputes.

### *The Federal Arbitration Act*

The Federal Arbitration Act (9 U.S.C. § 1, *et al.*) provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2019). The Fourth Circuit has explained that:

> [A] litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01, (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

---

[7]    Defendants assert that they have no relation to Plaintiff's main bankruptcy case as they allege they are not creditors of Plaintiff and have not filed a proof of claim in that case. Further, Defendants assert that the Bankruptcy Law Claims are facially meritless on several grounds. While Defendants may ultimately prevail on these grounds, these questions regarding whether Plaintiff has a student loan debt owed to Defendants and other related issues go to the merits of the underlying claims and do not go to the Court's initial determination of whether the claims asserted are the type that would inherently conflict with the Bankruptcy Code, such that arbitration should not be compelled. For these reasons, the Court will not consider these arguments of Defendants at this time.

However, as a predicate, a court must generally "'engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive dispute of that agreement.'" *Murray v. United Food and Comm. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). These arbitration issues are commonly known as "threshold issues" or "gateway issues" as they must generally be decided prior to compelling or commencing arbitration. However, while it is the default procedure for the court to decide such threshold issues, the parties may delegate this determination to an arbitrator if the parties clearly and unmistakably agree to do so in their arbitration agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (holding that parties may elect "to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

In the present matter, Plaintiff raises certain threshold issues, including challenging the Arbitration Clause on the grounds that it is unconscionable and asserting that Defendants have not demonstrated that Plaintiff signed and executed the Enrollment Agreement. While Defendants dispute Plaintiff's arguments, Defendants contend that, under the language of the Enrollment Agreement, such threshold issues must be determined by the arbitrator and not the Court.

### *Who Determines the Threshold Arbitration Issues—the Court or the Arbitrator?*

The Fourth Circuit has held that "empowering an arbitrator to determine arbitrability in the first instance 'cuts against the normal rule' that arbitrability disputes are for the court to resolve, [unless] 'a court [] find[s] by clear and unmistakable evidence that the parties have chosen to give arbitrability questions to an arbitrator.'" *Simply Wireless v. T-Mobile US, Inc.*, 877 F.3d 522, 526 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer and White Sales, Inc.*,

139 S. Ct. 524 (2019) (quoting *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 n. 1 (4th Cir. 2016)).[8] "The clear and unmistakable standard is exacting, and the presence of an expansive Arbitration Clause, without more, will not suffice." *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96 (4th Cir. 2012) (internal quotation marks omitted).

Defendants assert that the Arbitration Clause in this case provides clear and unmistakable evidence that the parties have elected to delegate the determination of threshold issues to the arbitrator because the Arbitration Clause indicates that the arbitration will be "in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect" if the parties cannot agree to alternative procedures.[9] Specifically, Defendants call the Court's attention to Rule 7 of the Commercial Arbitration Rules of the American Arbitration Association, which

---

[8]       The issues presented to the United States Supreme Court in *Henry Schein* were related but different than those presently before this Court. In the present matter, the issue before the Court is whether the language of an arbitration agreement provides clear and unmistakable evidence that the parties have chosen to give arbitrability questions to an arbitrator. In *Henry Schein*, this issue of whether the language provided clear and unmistakable evidence was not in dispute before the Supreme Court. *Henry Schein*, 139 S.Ct. at 532 (expressing no view on and remanding back to the lower court the determination of whether the contract delegated arbitrability questions to an arbitrator by clear and unmistakable evidence).  The central issue of *Henry Schein* dealt with a subsequent matter, whether courts may decline to compel arbitration despite the clear and unmistakable language in the arbitration agreement because of a so called "wholly groundless exception." *Id.* at 528. In *Simply Wireless*, the Fourth Circuit recognized the wholly groundless exception, which provided that despite the clear language of the agreement, "a district court need not, and should not, enforce a delegation provision when a party's assertion that a claim falls within an arbitration clause is frivolous or otherwise illegitimate." *Simply Wireless*, 877 F.3d at 529. The Supreme Court in *Henry Schein* rejected the wholly groundless exception, and held that when the language of the arbitration clause provides that arbitrability questions must be given to the arbitrator, the Court must follow that agreement of the parties regardless of the frivolous or illegitimate nature of the request to compel arbitration. *Henry Schein*, 139 S.Ct. at 529; *see also Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir.), *cert. denied*, 140 S. Ct. 256 (2019) ("The point of the *Henry Schein* opinion was that, where the parties *have agreed* to submit arbitrability to arbitration, courts may not nullify that agreement on the basis that the claim of arbitrability is groundless." (emphasis in original)); *Gibbs v. Stinson*, __ F.Supp.3d, 2019 WL 4752792 (E.D.Va. Sept. 30, 2019) (Defendants misread *Schein*. In that case, the Supreme Court abrogated the judge-made "wholly groundless" exception to the gateway arbitrability decision. . . . But that doctrine does not apply here. In this case, Plaintiffs challenge both the validity of the arbitration agreement and validity of the delegation clause, not the arbitrability or non-arbitrability of issues within the agreement.").

        In other words, pursuant to *Henry Schein*, if the Court finds that the Enrollment Agreement provides clear and unmistakable evidence of the parties' intent to arbitrate arbitrability questions, the Court may not decline to compel arbitration on the basis that such a request is frivolous or illegitimate.

[9]       The Arbitration Clause provides that the parties' dispute must first be resolved through the grievance policy published in the school's catalog. Neither party discussed the school's grievance policy and it is unclear whether the parties attempted to first utilize that policy to resolve this dispute.

provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

In *Simply Wireless*, the Fourth Circuit addressed <u>in the context of a transaction between two sophisticated parties</u>, whether an arbitration agreement that incorporated by reference a controlling set of arbitration rules (of which one of the rules provided that the arbitrator has the authority to determine his or her own jurisdiction) was clear and unmistakable evidence of the parties' intent to pass the determination of threshold arbitration issues to an arbitrator. *Simply Wireless*, 877 F.3d at 527. In a 2-1 decision, the Fourth Circuit held that "the explicit incorporation of the arbitration rules serve[d] as clear and unmistakable intent to arbitrate arbitrability." *Id.* at 528. However, the Fourth Circuit <u>expressly limited</u> its holding to the context of commercial contracts between sophisticated parties, and by implication appears to have reserved for later judgment whether such an incorporation of arbitration rules would be clear and unmistakable evidence in transactions involving an unsophisticated party. *See id.* ("We agree with our sister circuits and therefore hold that, <u>in the context of a commercial contract between sophisticated parties</u>, the explicit incorporation of [Arbitration] Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability. . . . [W]e hold that when, as here, <u>two sophisticated parties</u> expressly incorporate into a contract [Arbitration] Rules that delegate questions of arbitrability to an arbitrator, then that incorporation constitutes the parties' clear and unmistakable intent to let an arbitrator determine the scope of arbitrability." (emphasis added)). The Court of Appeals for the Fourth Circuit has not since addressed the evidentiary implications of an incorporation by reference to arbitration rules in the context of a contract involving an unsophisticated party, such as the consumer transaction existing here.

Defendants cite to the recommendation of the Magistrate Judge for the U.S. District Court for the District of South Carolina in *Green v. Rent-A-Center East, Inc.*, C/A No. 15-CV-3245-MGL-TER, slip op. 2015 WL 8907452 (D.S.C. Nov. 24, 2015) for support that, in the context of a transaction involving an unsophisticated party, the incorporation of a set of arbitration rules in an agreement provides clear and unmistakable evidence that the parties delegated to the arbitrator the determination of threshold issues. However, the Court in *Green* cited to multiple reasons for finding that the arbitration agreement in that matter clearly and unmistakably delegated to the arbitrator the determination of such issues. One of the chief grounds for the court's holding in *Green* was that the agreement contained clear additional language regarding the arbitrator's exclusive authority to determine threshold issues: "The Arbitrator and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including but not limited to any claim that the Arbitration Agreement is void or voidable." *Id.* at *2. The Arbitration Clause in the present matter does not contain similar explicit and clear language delegating such authority to the arbitrator. Further the arbitration agreement in *Green* was a separate, independent agreement associated with an employment contract between the parties, whereas the Arbitration Clause was a single paragraph within the Enrollment Agreement. *Id.* Therefore, the Court finds the present matter is distinguishable from *Green*.

Further, the Court finds persuasive the reasoning of the U.S. District Court for the District of Maryland in its recent opinion of *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 555 (D. Md. 2019). The court in *Stone* noted that nearly every Circuit Court of Appeals that held that the incorporation of arbitration rules satisfied the clear and unmistakable standard were addressing agreements involving sophisticated parties, such as organizations, and not unsophisticated

individuals. *Id.* at 554. The court observed that in several of these Circuits, splits have developed in the lower courts regarding that same question in the context of transactions involving an unsophisticated party. *Id.* at. 554–55. The court noted how unlikely it would be that an unsophisticated party would know what a set of arbitration rules were, and even less so, the specific contents of a particular rule within that set. *Id.* The *Stone* court highlighted that while the intent for the arbitrator to determine threshold issues through the incorporation of arbitration rules may be clear and unmistakable to the sophisticated party drafting the agreement, that intent is obfuscated to the unsophisticated party unless the unsophisticated party knows of the rules or takes the times to read each and every arbitration rule incorporated. *Id.* at 555. The court noted that the sophisticated party in that matter, as the drafter of the agreement, "can do better" to make the agreement clear and unmistakable as to any intent for an arbitrator to determine such threshold issues. *Id.*  The court concluded that "[i]t strains credulity to believe that the consumer knew—much less intended—that the cross-reference directed an arbitrator to decide arbitrability. To treat the Agreement as evidencing clear and unmistakable evidence of plaintiff's intent 'would take a good joke too far.'" *Id.* (quoting *Allstate Ins. Co. v. Tool Brothers, Inc.*, 171 F. Supp. 3d 417, 429 (E.D. Penn. 2016)) (internal quotation marks omitted). [10] The Court concurs with the reasoning in *Stone*.

In the present matter, the Enrollment Agreement was drafted by the Defendants to be executed by unsophisticated individuals enrolling in the Defendants' online university, such that

---

[10]    The court in *Allstate* elaborated that "incorporating forty pages of arbitration rules into an arbitration clause is tantamount to inserting boilerplate inside of boilerplate, and to conclude that a single provision contained in those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent would be to take "a good joke too far." *Allstate*, 171 F.Supp.3d at 429 (quoting *Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3d Cir. 1948)).

it is likely an adhesion contact.[11] The Arbitration Clause contained therein provides only a brief reference to the Commercial Arbitration Rules of the American Arbitration Association, indicating that the arbitration would be in accordance with such rules <u>if</u> the parties do not agree to alternative procedures.[12] Unlike the agreement in *Green*, it does not provide any additional and specific language regarding the authority of the arbitrator to decide arbitration issues and is not a separate, independent document from the Enrollment Agreement. As such, the Arbitration Clause and the factual circumstances surrounding it are similar to those at issue in *Stone*.

In transactions involving sophisticated parties, it is likely that the parties are experienced and knowledgeable on such matters or have retained counsel to review the agreement or that the parties were otherwise familiar with arbitration rules such that the incorporation of those rules in the agreement provided clear and unmistakable evidence of an intent for an arbitrator to determine threshold issues. The same cannot be said for consumer transactions, like the one presented in this matter, where the unsophisticated individual is unlikely to be aware of any set of arbitration rules or the specifics of a particular rule, such that it is highly unlikely that a general reference to arbitration rules would indicate the unsophisticated party's intent to arbitrate threshold issues. As the Fourth Circuit Court of Appeals has stated, the clear and unmistakable standard is exacting. Defendants, as the drafters of the Enrollment Agreement, "can do better" to ensure that any intent to delegate these determinations to the arbitrator is clear and unmistakable not only for themselves,

---

[11]     Black's Law Dictionary defines adhesion contract as "[a] standard contract prepared by one party, to be signed by another party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms . . . ." Adhesion Contract, *Black's Law Dictionary* (9th Ed. 2009).

[12]     The Court also notes that unlike in *Green* and *Simply Wireless* (in which the arbitration agreements in dispute required the use of arbitration rules), under the Enrollment Agreement in this case, the use of the Commercial Arbitration Rules of the American Arbitration Association is not mandatory but is a fallback triggered by the parties' failure to agree to alternative procedures after the parties fail to resolve the matter under the procedures provided in the grievance policy in the university's catalog.

but also the students enrolling in the Defendants' schools.[13]  This Court agrees with *Stone* that in context of an unsophisticated party entering an adhesion contract that includes an arbitration agreement, the incorporation of a set of arbitration rules does not alone create clear and unmistakable evidence of an intent for an arbitrator to determine threshold arbitration issues. Therefore, the Court finds the Enrollment Agreement in the present matter does not satisfy the clear and unmistakable standard. According to the present record, the Court must determine these threshold arbitration issues.

### *Determination of Threshold Issues*

Section 4 of the Federal Arbitration Act provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4 (2019). In the present matter, the parties provided arguments in their briefs and at hearing regarding the threshold issues raised. However, as Defendants' request to compel arbitration was heard in connection with its Rule 12(b)(6) motion to dismiss, evidence was not submitted at the hearing on the Motions. As there is a factual dispute regarding whether Debtor signed and executed the Enrollment Agreement as well as a dispute whether Plaintiff's consideration of or intent regarding the Enrollment Agreement was affected by his service in active military duty or a combat zone and whether the Arbitration Clause in the

---

[13]      The Court conducted a search of the federal courts for cases involving Defendant Colorado Technical University and found that few of these cases were referred to arbitration of the disputes.

Most notable, as appears settled in case law, it appears that in 2012, a date after the alleged date of the subject Enrollment Agreement, Defendant Colorado Technical University included additional language in its enrollment agreements to clarify that the parties agree that the arbitrator shall decide threshold issues. *See Grasty v. Colo. Tech. Univ.*, C/A No. 13-CV-3221, slip op. (N.D. Ill. Aug. 12, 2014).  Specifically, the 2012 enrollment agreement states: "Any disputes, claims or controversies between the parties to this Enrollment Agreement arising out of or related to . . . any objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement, shall be resolved pursuant to [the Arbitration Agreement]." *Id.* at 1. The 2012 enrollment agreement also included the following statement near the student's signature, which was not included in the Enrollment Agreement in dispute in the present matter, to alert the student of the arbitration agreement: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." *Id.* at 2 (emphasis in the original).

Enrollment Agreement is unconscionable, a further limited hearing is necessary for the presentation of evidence on these issues. Therefore, the Court hereby schedules a further hearing on Defendants' Joint Motion to Compel Arbitration for **January 28, 2020 at 9:30 AM** at the J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, South Carolina 29201.[14]

**AND IT IS SO ORDERED.**

Columbia, South Carolina
January 3, 2020

**FILED BY THE COURT**
**01/03/2020**



US Bankruptcy Judge
District of South Carolina

Entered: 01/03/2020

---

[14]     If, prior to the further hearing, the parties settle the matter, agree to mediation or Defendants withdraw the Motion to Compel Arbitration, the hearing will be cancelled. If the Motion to Compel Arbitration is withdrawn or is denied after the January 28, 2019 hearing, the Court will consider the Rule 12(b)(6) Motion previously heard.